UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ANDRE DEMERY #126262                  CIVIL ACTION NO. 19-cv-1469

VERSUS                                CHIEF JUDGE HICKS

DARREL VANNOY                         MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

A Webster Parish jury voted 11-1 to convict Andre Demery ("Petitioner") of aggravated rape of a victim who was under the age of 13. A mandatory life sentence was imposed. The conviction was affirmed on direct appeal. State v. Demery, 165 So.3d 1175 (La. App. 2d Cir. 2015), writ denied, 207 So.3d 1067 (La. 2016). Petitioner then filed a state post-conviction application, which was also denied. He now seeks federal habeas corpus relief on several grounds. For the reasons that follow, it is recommended that his petition be denied.

### Sufficiency of the Evidence

#### A. The Trial

Petitioner was indicted for aggravated rape (since renamed first degree rape) in violation of La. R.S. 14:42(A)(4) based on the rape of a juvenile, C.S., who was under the age of 13 at the time of the offense. The principal and a counselor at C.S.'s school testified at trial that students were saying that C.S. was pregnant. The principal and counselor met with C.S., who admitted that she had been having sex and that she told some of her friends

she thought she was pregnant.  She said the father could be a boy from Gibsland.  C.S. said that her mother did not know about the situation, but her father did.

The principal summoned C.S.'s mother, Treniece Shehee, to the school and explained the circumstances.  The principal testified that Ms. Shehee asked C.S. who the father was.  The child put her head down and did not say anything.  Ms. Shehee then asked if it was her dad.  C.S. started crying and said yes.  The principal then contacted the sheriff's department.  The sheriff's office arranged for C.S. to be interviewed at the Gingerbread House, a children's advocacy center.  A forensic investigator questioned C.S., and a video of the interview was played for the jury.  C.S. also testified live at trial and said that the information she gave in the video interview was true.

In the video interview, C.S. said that she was 12 years old and lived with her mother and two sisters.  C.S. said Petitioner, her father, had been released from prison and threatened to take her away from her mother unless the mother agreed to let Petitioner spend time with C.S.  She said that, during a visit at Petitioner's house, he took her into his room and "started messing with [her]" and touching her.  She said this meant "trying to have sex."  She described waking up to find Petitioner on top of her, with both of their pants down, and his "private" was in her "private" and he was moving.

C.S. also said that Petitioner picked her up in his car, drove to a secluded area, and made her get in the backseat and take off her pants.  He then put his private in her private.  This happened "every weekend" and more than ten times.  C.S. was shown anatomically correct drawings of a man and a girl.  She circled the penis on the male and the vagina on the female to explain what she meant by privates.  C.S. testified at trial that she used a

towel in Petitioner's vehicle to clean herself after they had sex.  She admitted that she first told her teacher that she may be pregnant by a boy from Gibsland, but that was because she was embarrassed and did not want to admit that it was her father.

Treniece Shehee testified that she was suspicious of Petitioner because of occurrences when C.S. visited him.  For example, Petitioner would say he was taking C.S. to get something to eat or to buy clothes, but she would return without having eaten and with no new clothes.  Also, C.S. sometimes said that she did not want to go to her father's house.

A DNA analyst from the crime lab testified that she analyzed samples of bodily fluids on cuttings that detectives collected from the seats of Petitioner's vehicle.  She said that seminal fluid was present in cuttings taken from the back seat, and the DNA from that fluid was consistent with Petitioner's DNA profile.  She also tested a black towel that detectives removed from the vehicle's floorboard.  Skin cells on the towel were consistent with C.S.'s DNA profile.  The towel also contained DNA of a second person.  Petitioner could not be excluded as the donor of that DNA, but 99.9% of the rest of the population could be excluded.

Petitioner testified at trial and denied ever having sex with C.S. or touching her in a sexual way.  He disputed aspects of C.S.'s testimony, such as a statement that she would stay with him sometimes so that she could visit cousins in the area.  He said she did not have any cousins nearby, though his girlfriend's sister's child lives in the area and is C.S.'s best friend.  He said he did buy clothing and shoes for C.S., but she kept the items at her grandmother's house because she liked to hide them from her mother.  Petitioner testified

that the black towel was in his vehicle to protect the carpet during a recent move. It had previously been used as his bath towel and might have been used by the children in the home. The jury voted 11-1 to find Petitioner guilty of aggravated rape.

### B. The Appeal

Petitioner challenged the sufficiency of the evidence on direct appeal. In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

The state appellate court recited the Jackson standard and reviewed the evidence in great detail. The court applied that evidence to the elements of the statute under which Petitioner was charged. The evidence included C.S.'s statement that Petitioner put his penis, which she described as his private, in her vagina, which she described as her private, and was moving at the time. This direct evidence was sufficient to prove every element of the crime of rape. There was also uncontested evidence that C.S. was born in 2000 and that the events took place in 2012 when she was 11 to 12 years old. The court noted that the jury clearly chose to accept C.S.'s testimony as credible after observing her demeanor on the video and in person at trial. The DNA evidence also supported the victim's testimony. The court affirmed the conviction.

### C. Habeas Analysis

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

Petitioner's habeas memorandum recites the facts almost identically as they were set forth in the state appellate court's opinion. He acknowledges the Jackson standard and then concludes, in a few sentences, that the evidence at trial "do not afford a Reasonable Probability that the alleged rape ever occurred." He argues that upholding the conviction was contrary to established federal law, so his conviction should be vacated. There is no basis for habeas relief with respect to these arguments. The state court carefully reviewed the evidence and applicable law, and it reached an entirely reasonable decision. Petitioner argues that there was "absolutely no direct evidence" presented, but the victim herself offered direct evidence in the form of testimony, and DNA evidence (also direct evidence) supported her testimony. Habeas relief is not permitted on this claim.

**Ineffective Assistance of Counsel**

### A. Introduction

Petitioner argues that his trial attorney rendered ineffective assistance of counsel in several ways.  To prevail on such a claim, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different.  Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

### B. State Court Decisions

Petitioner litigated his several ineffective assistance of counsel claims in a state post-conviction application.   The trial court acknowledged Petitioner's various submissions, recited the Strickland standards, and discussed state law regarding the burden of a post-conviction applicant.  The court did not specifically discuss any of the several Strickland claims.  They were summarily rejected as follows:

> Based upon the allegations concerning the actions of Petitioner's counsel in this manner (sic), the Court cannot find that counsel's performance fell below an objective standard of reasonableness.   Petitioner has not shown a reasonable probability that but for his counsel's actions the result of the proceeding would have been different.  Therefore, for each of these reasons, the Ineffective Assistance of Counsel Claim in Petitioner's Application for Post-Conviction Relief is DENIED.

Tr. 330-31.  Petitioner applied for a supervisory writ.   The state appellate court acknowledged that Petitioner's application included "various claims of ineffective assistance of trial and appellate counsel."  All claims were summarily rejected: "On the showing made, this writ is denied."  Tr. 352.  The Supreme Court of Louisiana also denied a writ application in a per curiam opinion that summarily concluded that Petitioner "fails

to show that he received ineffective assistance of counsel under the standard of Strickland[.]" Tr. 412.

### C. Habeas Burden

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). For the federal court to grant relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quotation marks removed).

### D. Not Calling a DNA Expert

The State called Katherine Traweek of the crime lab to testify as a forensic DNA analyst. Petitioner argues that his attorney rendered ineffective assistance when he did not call his own DNA expert to counter some of Ms. Traweek's testimony about DNA evidence from the black towel found in Petitioner's car. Traweek first testified about how she was able to identify spermatozoa and prostate specific antigen (PSA) on cuttings from the backseat fabric. She noted that DNA is contained within sperm, and she was able to obtain a DNA profile that was consistent with the reference sample from Petitioner. The

probability of finding that profile in a randomly selected person other than Petitioner was approximately one in 14.9 sextillion.  She also testified about other samples before turning to item 15, the black towel.  Ms. Traweek testified that the towel contained DNA consistent with Petitioner, and it included skin cells with a profile consistent with the DNA of C.S. (one in 185 quintillion).  She went on to discuss how semen can contain skin cells and sperm cells, and both kinds of cells can contain DNA.  The prosecutor asked Ms. Traweek if it could be determined for a female whether DNA came from vaginal fluid versus skin cells or something else.  She replied that females do not have sperm, so there was not a test then available to say what type of cells the DNA came from in a female.  Tr. 211-15.  On cross-examination, she said that C.S. could have transferred her epithelial (skin) DNA to the towel while drying off with it after a shower; it was impossible to say how her DNA got on the item.  Tr. 226.

Petitioner argues that Ms. Traweek's testimony was "clearly false" when she said there was no test available to determine what part of a female DNA came from.  Petitioner asserts that it is illogical to believe, with today's technology and knowledge, that we cannot make such distinctions.  He states that it is important because C.S. testified that she used the black towel to clean herself after having sex.  He contends that DNA testing should be able to determine that her DNA on the towel was not from vaginal fluids and rather was from other parts of her body due to ordinary use of the towel.  Petitioner offers no scientific publications, affidavits, or other evidence to support his conclusion.

Petitioner has not identified an expert who could have been called on this issue and would have presented testimony along the lines suggested by Petitioner.  Such

"unsupported claims regarding the uncalled expert witness are speculative and disfavored by [the Fifth Circuit] as grounds for demonstrating ineffective assistance of counsel." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002). Petitioner must also be able to show a reasonable probability that, but for counsel not hiring such an expert, the jury would have had a reasonable doubt concerning Petitioner's guilt. Id. Petitioner cannot meet that burden based on his mere speculation that there may be such an expert out there somewhere who might have helped. Allen v. Stephens, 619 Fed. Appx. 280, 287 (5th Cir. 2015) (no prejudice shown where there was no evidence expert would have testified favorable to the defense). Petitioner has not demonstrated that the state courts' adjudication of this issue was an unreasonable application of Strickland.

### E. Uncalled Lay Witnesses

Petitioner argues that trial counsel was ineffective because he did not call a number of witnesses. Petitioner argues that counsel should have subpoenaed Diamond Montgomery, a friend of C.S., who felt that C.S.'s cousin was the father of her child. Petitioner also points to witnesses he says could have testified that they were with Petitioner and the victim the entire day and that the only time Petitioner was alone with the victim was when he drove her about four blocks to another house. Petitioner points to social worker Andrea Bryant, who he says could have testified that the victim was pregnant and "[f]urther questioning would have enlightened the jury that there was an aborted fetus" from which DNA could have been used to determine paternity. Petitioner does not point to or present any affidavits or other source of testimony from any of these proposed witnesses.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2000). A petitioner "must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." Day v. Quarterman, 566 F.3rd 527, 538 (5th Cir. 2009). Petitioner did not make this showing to the state court by affidavit or other evidence. His claim, therefore, lacks habeas merit under the requirements of Section 2254(d). Cox v. Stephens, 602 Fed. Appx. 141, 146 (5th Cir. 2015) ("Cox has failed, through affidavits or otherwise, to demonstrate that these witnesses would have testified ..."); Gray v. Epps, 616 F.3d 436, 443 (5th Cir. 2010) (petitioner failed to show uncalled witnesses were available to testify where affidavits did not contain statement to that effect); Evans, 285 F.3d at 377 (reversing grant of habeas relief when no affidavits were presented from the alleged witnesses); and Vasquez v. Thaler, 505 Fed. Appx. 319, 327 (5th Cir. 2013) (state court denial of claim was reasonable when petitioner did not offer affidavits or testimony from proposed witnesses).

The presentation of witnesses is generally a matter of trial strategy, and what witnesses might have said on the stand is speculation. That is why the Fifth Circuit places a heavy burden on a petitioner who seeks to show ineffective assistance of counsel on such grounds. Petitioner offers only speculation in his memorandum. Given the lack of specific evidence regarding these witnesses, the state court's denial of these Strickland claims was reasonable and does not permit habeas relief.

### F. No Motion to Quash Indictment

The grand jury indictment accused Petitioner of, on or about or between the dates of October 1, 2012 and November 29, 2012, committing aggravated rape of a juvenile (identified by initials and date of birth), "by having anal, oral, or vaginal intercourse without the lawful consent of the victim, victim being under the age of thirteen years, contrary to L.R.S. 14:42.A.(4); contrary to the law of the State of Louisiana." Tr. 4. Petitioner argues that defense counsel was ineffective because he did not file a motion to quash the indictment on the grounds that it did not allege the parish in which the crime was committed. A motion to quash may be based on grounds including that the court has no jurisdiction of the offense charged. La. C. Cr. P. art. 532(8).

This case was indicted and tried in Webster Parish. The indictment did not specify the parish in which the crime was alleged to have been committed, but Petitioner has not shown that state law required it. Louisiana law provides: "It is not necessary to state any venue in the body of the indictment, but the state, parish, or other jurisdiction where the indictment is filed shall be taken to be the venue for the offense charged in the indictment." La. C. Cr. P. art. 469. The comments to the article note that an indictment need not allege the place where elements of an offense were committed. Furthermore, C.S. testified at trial that she had sex with Petitioner at several locations in Webster Parish, though she did state that the first time it happened was at Petitioner's home in Gibsland, in neighboring Bienville Parish. Any motion to quash based on the lack of the parish from the indictment would have lacked merit, and "counsel is not required to make futile motions or

objections." <u>Garcia v. Stephens</u>, 793 F.3d 513, 525 (5th Cir. 2015), quoting <u>Koch v. Puckett</u>, 907 F.2d 524, 527 (5th Cir. 1990).

Petitioner also argues that counsel should have filed a motion to quash on the grounds that the indictment did not give him adequate notice by specifying the form of intercourse that was allegedly committed. Petitioner cites no Louisiana decisions that hold an indictment should be quashed for that reason. Furthermore, the defense would have learned of the detailed facts of the alleged crime through routine discovery of police reports, witness statements, and the like. Petitioner does not articulate how he was prejudiced by counsel not filing a motion to quash on this basis. Even if a motion had been filed and was successful, the State could have easily obtained a new indictment that cured any such deficiencies. That prevents Petitioner from satisfying the prejudice prong of <u>Strickland</u>, so this claim must fail. <u>Pickney v. Cain</u>, 337 F.3d 542, 546 (5th Cir. 2003) (no prejudice could be shown from failure to file motion to quash indictment based on discrimination in selection of foreman because State could have easily obtained a second indictment).

### G. Communication of Plea Offer

Petitioner's post-conviction and federal habeas memorandum begin this argument with: "As the record reflects, on April 28, 2014, the prosecution stated in open court that Petitioner had been offered several offers, including the lesser included offense of simple rape." Petitioner states that this was the first day of trial, so the offer would have expired. He contends that his defense counsel never notified him of this plea offer and that he would have accepted the offer if it were known to him. The State responds that on the day of trial

Petitioner sought to discharge his defense counsel "and refused to consider a guilty plea to any lesser charge." Neither Petitioner nor the State cite the pages in the record where these events allegedly happened. The court has reviewed the transcript that was made available, and these alleged discussions are not apparent. Perhaps they occurred during voir dire or other preliminary proceedings that were not transcribed for the appellate record (as discussed below). In any event, specificity by either side would have been beneficial.

A defendant is entitled to effective assistance of counsel during the plea bargaining process. "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 132 S.Ct. 1399, 1408 (2012). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Lafler v. Cooper, 132 S.Ct. 1376, 1387 (2012). "If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." Id.

This claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard (as applied in Frye and Lafler) was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro, 127 S.Ct. at 1939. And this court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).

Petitioner has not satisfied his burden. He has not pointed to any material in the state court record that indicates counsel did not communicate a plea offer or, moreover, that Petitioner would have accepted the offer. Given the complete lack of record evidence on this claim, it is impossible to say that the state court's denial of this ineffective assistance of counsel claim was an objectively unreasonable application of clearly established federal law. Habeas relief is not permitted on this claim.

### H. No DNA Analysis of Towel

Petitioner asserts that counsel was ineffective because he did not obtain a DNA analysis of the towel that would have determined what part of the victim's body was the source of the DNA. This is the same argument presented earlier with respect to not calling a DNA expert. The crime lab witness testified that there was no available test to determine from where on the victim's body the sources of the DNA originated. Petitioner has offered nothing but conclusory assertions that this is incorrect. Absent any evidence that undermines the witness's testimony, the court cannot say that the state court's rejection of this claim was an objectively unreasonable application of Strickland.

### I. Search of Car

Petitioner filed a pro se motion to suppress in which he alleged that he was arrested at work on December 5, 2012, and sheriff's deputies took his car from his workplace and illegally searched it. Tr. 19. Defense counsel later field a motion that adopted the motion to suppress. Tr. 26. But minutes show that Petitioner later appeared in court with counsel and announced ready for trial. Also, "The defendant withdrew his own Motion to

Suppress." Tr. 407. Petitioner now argues that counsel was ineffective for not pursuing a motion to suppress the results of the car search.

Petitioner asserts that detectives obtained a search warrant on December 7, two days after his arrest. The record does not appear to include a copy of the warrant to confirm that date, and none of the deputies who testified at trial noted the date. Detective Teresa Rogers was asked if the sheriff's department got a search warrant and obtained evidence from the car, and she said yes. She added that the car was at the detention center when searched. Tr. 149-50. (Presumably the car was towed from Petitioner's place of employment, Fibrebond, to the detention center after his arrest.) Deputy Jennifer Ervin was asked if she obtained cuttings from the backseat of the car "after a search warrant was obtained," and she said yes. Tr. 153. Detective Barry James agreed that he took photographs of the inside of the car "after the search warrant was obtained." He identified his photographs as being taken on December 10. Tr. 163-64.

Petitioner contends that a comparison of photos taken on December 5 (date of arrest) to December 10 (after a search warrant was obtained) showed that some items were moved, indicating that the car was searched prior to the issue of the warrant. He contends that counsel was ineffective for not suppressing the evidence. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 106 S.Ct. 2574, 2583 (1986); Shed v. Thompson, 2007 WL

2711022, *5 (W.D. La. 2007). This is a habeas challenge under Section 2254(d)(1), so the Petitioner must establish not only that suppression of the evidence would be the correct result, but also that it would be contrary to or an unreasonable application of clearly established federal law for the state habeas court to rule otherwise. Evans v. Davis, 875 F.3d 210, 219 (5th Cir. 2017).

Petitioner has not pointed to any evidence to support his assertion that the car was searched prior to the issuance of a warrant. All trial testimony was to the effect that the warrant preceded the search. Petitioner contends that photos taken on the day of his arrest show a matchbox and cigarette pack were moved between then and the time of the official search. Petitioner refers to exhibits, but he does not cite to their pages in the record or submit them as exhibits to his filings. The fact that the car had to be transported from his place of employment to the detention center for impoundment might explain small changes in the location of contents. In any event, Petitioner simply has not demonstrated that there was a meritorious Fourth Amendment challenge that his counsel could have prevailed upon if raised. The state court's denial of this claim was not an unreasonable application of Kimmelman or other clearly established federal law.

### J. Gingerbread House Video

Petitioner contends that counsel was ineffective because he did not move to suppress the Gingerbread House video on the grounds that the interviewer asked leading questions. The State filed a pretrial motion that sought to admit the video recording based on special statutes for the admission of such evidence in cases involving child victims. Tr. 30-31. At trial, outside the presence of the jury, the court took up the issue of the admissibility of the

video interview.  Testimony about the setting and circumstances was heard, and the video was played for the judge.  Afterwards, defense counsel stated that one of the requirements of the statute was that the examination not be by leading questions.  He argued that there "were more leading questions in that video than any of them I've ever seen," and he raised other objections under the statute.  After hearing argument, the trial judge noted that a factor was whether the statements were made in response to questions calculated to lead the person to a particular statement.  The judge then stated:

> Truly, under a, just a tight, tight issue of what's leading, maybe perhaps it was a leading question.  But I do agree that that was in summary.  I don't believe that that interviewer asked certain questions that were calculated to get a particular statement out of that protected person.  So I don't - - I believe that argument fails.

Tr. 125-39.  The state court record filed with this court does not include a transcript of the Gingerbread House video testimony.  Tr. 134 & 148 (noting video was played in court, but contents were not transcribed).  Fortunately, the state appellate court's opinion includes a detailed description of the interview, and Petitioner adopted that description almost verbatim in his memorandum.

Petitioner makes a conclusory assertion that the interviewer used leading questions and that counsel should have moved to have the video suppressed for that reason.  But Petitioner has not identified a single leading question.  In any event, defense counsel did argue for suppression based on allegedly leading questions, and the trial judge denied the request after careful consideration.  The only available record evidence with respect to this claim was discussed above.  That record does not allow this court to say that the state court's rejection of this <u>Strickland</u> claim was objectively unreasonable.

### K. No Motion for Mistrial

Petitioner argues that his counsel should have moved for a mistrial based on certain arguments made by the prosecutor.  In his opening statement, the prosecutor stated that "we think the evidence will show that she made up a story and told the principal it was - - the father was a boy in Gibsland because she thought maybe if she's just having sex, maybe this whole thing, it's so embarrassing it just - - it was overwhelming for her."  Tr. 79.  Petitioner characterizes this as the prosecutor testifying for the victim.  The prosecutor concluded his opening statement by stating, "Ladies and gentlemen, the evidence in this case is overwhelming that Andre Demery is guilty of aggravated rape."  Tr. 81.

In closing argument, the prosecutor said, "The evidence is simply overwhelming that Andre Demery is guilty of aggravated rape as charged by the Grand Jury in their indictment."  Tr. 252.  He also stated that Petitioner was "certainly guilty of all these lesser crimes" as well as aggravated rape.  Tr. 253.  He also said, "This case has tons of evidence.  He is guilty as charged."  Tr. 254.

Petitioner argues that these were improper arguments that voiced the prosecutor's personal opinion, so defense counsel should have asked for a mistrial.  The Fifth Circuit has "recognized that deciding whether to object before a jury is a quintessential matter of trial strategy not to be second-guessed." Thomas v. Thaler, 520 Fed. Appx. 276, 281 (5th Cir. 2013).  Many attorneys choose not to object to questionable argument because doing so might draw undue attention to the harmful comments.  Id., citing Hernandez v. Thaler, 398 Fed. Appx. 81, 87 (5th Cir. 2010).  There is no basis to hold defense counsel constitutionally ineffective because he did not object to the cited arguments.  And

Petitioner has not cited any Louisiana authority that would have warranted the trial court granting a mistrial if counsel had objected. The state court's denial of this Strickland claim was entirely reasonable.

**Ineffective Assistance of Appellate Counsel**

Petitioner argues that his appointed appellate counsel was ineffective because he requested a transcript but disregarded the fact that the first day of the proceedings was not included. The proceedings that were not transcribed included jury selection and Petitioner's motion for substitution of counsel. The lack of a transcript of those events is not surprising; appellate counsel commonly do not request a transcript of the jury selection process if they do not intend to present any related appellate arguments.

Persons convicted of a crime are entitled to effective assistance of counsel on their first appeal of right. Evitts v. Lucey, 105 S.Ct. 830 (1985). Counsel's performance on appeal is judged under the familiar two-prong Strickland test. On appeal, effective assistance of counsel does not mean counsel who will raise every non-frivolous ground of appeal available. It means counsel who will perform in a reasonably effective manner. Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir. 1998) (citing Evitts).

Petitioner does not identify any particular appellate issues that counsel should have raised on appeal that would be based on those first-day proceedings. Thus, the mere lack of a transcript does not render appellate counsel ineffective. Petitioner does argue that appellate counsel should have challenged the sufficiency of the indictment, but that could have been done based on the indictment itself without the need for the additional record. In any event, for the reasons discussed with respect to trial counsel and the lack of a

challenge to the indictment, there is no basis for habeas relief with respect to appellate counsel on this issue.

**Post-Conviction Proceedings**

After Petitioner filed his post-conviction application, the trial court ordered the State to file a response.  Petitioner filed a motion to compel and a writ of mandamus regarding the lack of a timely response.  The State did file an answer (Tr. 326), and the trial court denied the application without a hearing.  Petitioner argues that the State procedurally defaulted by not properly responding to his application, that the trial court judge committed fraud by covering up for the State's failure, and the state court should have granted him an evidentiary hearing.

The federal habeas court does not sit to correct procedural errors alleged to have happened in the postconviction process.  "[I]nfirmities in State habeas proceedings do not constitute grounds for relief in federal court." Rudd v. Johnson, 256 F.3d 317, 319 (5th Cir. 2001).  See Kinsel v. Cain, 647 F.3d 265, 273 (5th Cir. 2011) ("no state habeas infirmities" rule barred habeas review of claim that state appellate court violated due process during post-conviction proceedings).  These rules have been relied upon to reject habeas claims that the state court should have held an evidentiary hearing on a post-conviction application.  Mathis v. Dretke, 124 Fed. Appx. 865, 871-72 (5th Cir. 2005).  Petitioner is not entitled to habeas relief from his conviction based on these final claims.

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 29th day of April, 2022.

Mark L. Hornsby
U.S. Magistrate Judge